# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Briefs November 2, 2010

## STATE OF TENNESSEE v. PHILLIP LYNN DORSE

### Appeal from the Circuit Court for Dyer County
### No. 08-CR-299    Lee Moore, Judge

### No. W2010-00685-CCA-R3-CD  - Filed June 7, 2011

Appellant, Phillip Lynn Dorse, was indicted by the Dyer County Grand Jury for two counts of aggravated assault in connection with a neighborhood altercation during which Appellant hit two individuals with a baseball bat. After a jury trial, Appellant was convicted of one count of aggravated assault and one count of assault. The trial court sentenced Appellant to an effective sentence of eight years as a Range II, multiple offender to be served consecutively to a previously imposed sentence. On appeal, Appellant argues that the evidence was insufficient to support his convictions and that the trial court erred in imposing consecutive sentences. After a thorough review of the record, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., Joined.

Timothy Boxx, Assistant Public Defender, for the appellant, Phillip Lynn Dorse.

Robert E. Cooper, Jr., Attorney General and Reporter, Cameron L. Hyder, Assistant Attorney General; C. Phillip Bivens, District Attorney General, and Charles Dyer, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

On July 19, 2008, Lori McCord was involved in a physical altercation with some women in front of her house on Lovejoy Road in Dyer County. Appellant was living down the street with Sherry Lee. Several people were trying to separate the women involved in the altercation. Appellant and a few other people arrived. Already present in the McCord's yard were Barry McCord, Mike Hipps, and Gilberto Charcas. William Tolley arrived during the altercation to pick up his girlfriend's son from Mrs. McCord.

The women were separated, but a second altercation involving several of the men began. Appellant had a baseball bat in his hand. According to several witnesses, Mr. Tolley watched the fighting, but he did not get involved. Appellant pushed Mr. Hicks, who was standing near Mr. Tolley. Because it was dark, Mr. Tolley thought that Mr. Hicks was not an adult and told Appellant not to hit a kid. Appellant struck Mr. Tolley twice in the arm and once in the head with the baseball bat. Mr. Tolley sustained severe bruising of his arm from his shoulder to his elbow and had "knots and bruises" on the back of his head. Mr. Tolley denied that he hit Appellant, but he did admit that he chased Appellant after Appellant hit him with the baseball bat. Mr. Tolley was unable to catch Appellant.

When the altercation began between Appellant and Mr. Tolley, Mr. Charcas grabbed a two-by-four board and began to try to push people away in order to break up the fight. By all accounts, Mr. Charcas was very intoxicated. At some point after Appellant ran away from Mr. Tolley, Mr. Tolley was informed that Cory Rose and Appellant were hitting Mr. Charcas with baseball bats. Mr. Charcas was severely beaten. While waiting for the helicopter to take him to the hospital, Mr. Charcas lost consciousness several times. He lost a great deal of blood. One witness described his head as "smushed in" from the baseball bat. The witness described three separate injuries to Mr. Charcas's head. When Mr. Charcas testified, he stated that he had trouble remembering the event because of the injuries he sustained that day.

Appellant testified at trial. He stated on the day in question he was at the store with his girlfriend and his aunt. His girlfriend received a telephone call from her children that they had been threatened by Mr. Charcas. Appellant and his girlfriend returned home. When they arrived at the house, his girlfriend ran down the street, and she was "jumped" by three women. Appellant went down the street and saw Mr. Hipps hit his girlfriend. For that reason, Appellant pushed Mr. Hipps. At that point, Mr. Tolley hit Appellant with his fist. Appellant stated that Mr. Tolley hit him "so hard, all [he saw] was stars." Ms. Lee was standing near Appellant with a baseball bat, so he grabbed the bat from her and hit Mr.

Tolley with the bat twice. Appellant threw the bat down on the ground and walked away. When he returned to his house, he called the police to report his assault. Appellant denied hitting Mr. Charcas. He stated that Mr. Rose was over by Mr. Charcas.

Sheila Canada is Appellant's girlfriend. She stated that she received a telephone call at the store informing her that Mr. Charcas was threatening her children. When she returned home, she grabbed a baseball bat and walked down the street. When she got down the street, Ms. Canada got into a fight with Ms. McCord. Ms. Canada threw the bat to the ground before she began to fight. Ms. Canada got away from Ms. McCord and ran home to call the police. After calling the police, she walked outside and saw Appellant standing near the road in her yard. She told him to come home. She did not see Appellant involved in any altercations.

Mr. Rose, Ms. Lee's son, testified for the defense. Mr. Rose was sixteen at the time of trial. He testified that the incident began when the "people down the street" began shooting at him. He stated that Mr. Hipps and Mr. Charcas were among them. When his mother returned, his mother and Appellant ran down the street. Appellant was carrying a baseball bat. Mr. Cory stated that Appellant and Mr. Charcas were the first people involved in the fight. He stated that he saw Appellant hit Mr. Charcas. Mr. Cory testified that he saw the fight between Appellant and Mr. Tolley. Mr. Cory stated that he saw Appellant hit Mr. Tolley with the baseball bat when Mr. Tolley did nothing to provoke Appellant. Mr. Cory stated that he did not have a baseball bat the night of the incident. He also denied hitting Mr. Charcas.

Misty Singletary was also a witness for the defense. The evening in question she was with her boyfriend, Mr. Charcas, and his girlfriend. Mr. Charcas's girlfriend said there was an altercation at her sister's, and they needed to go to her sister's house. When they arrived, there was a fight in progress. Ms. Singletary stated that Mr. Charcas was drunk the night in question. She stated that she knew Appellant but did not see him at the altercation that night. However, she stated that it was dark, and there were many people walking around. She also stated that she did not see anyone get hit with a baseball bat.

Deputy Allen Fair was dispatched to Lovejoy Road. When he arrived, he discovered a large disturbance. He found Mr. Charcas in serious condition and surrounded by a great deal of blood. Deputy Fair stated that it appeared that the altercation took place in front of or in the yard of the McCord house. Deputy Heath Walker arrived shortly after Deputy Fair. Deputy Fair had interviewed several people and told Deputy Walker to locate Appellant. Deputy Walker found Appellant at Sherry Lee's house which was approximately 100 yards from the McCord's house. Deputy Walker noticed no injuries on Appellant's body. Deputy Walker stated that Appellant began to scream at him. Deputy Walker placed Appellant under

arrest. At trial, Deputy Walker characterized Appellant as "very uncooperative and combative" when he was arrested.

On August 11, 2008, the Dyer County Grand Jury indicted Appellant for two counts of aggravated assault in connection with the assaults on Mr. Charcas and Mr. Tolley, and one count of assault in connection with the assault on Mr. Hipps. On September 10, 2009, a jury trial was held. Count three, the simple assault charge, was not presented to the jury. At the conclusion of the trial, Appellant was convicted of one count of aggravated assault and one count of assault. The trial court held a sentencing hearing on October 13, 2009. The trial court sentenced Appellant to eight years for the aggravated assault conviction as a Range II, multiple offender and eleven months and twenty-nine days for the assault conviction. These sentences were ordered to be served concurrently to each other but consecutively to previously imposed sentences.

Appellant filed a timely notice of appeal.

## ANALYSIS

### Sufficiency of the Evidence

On appeal, Appellant argues that the evidence was insufficient to support his conviction because the evidence showed that he acted in self-defense. When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at

779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)(quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Appellant argues that evidence showed that he acted in self-defense. Tennessee defines self-defense as follows:

> (b)(1) Notwithstanding § 39-17-1322, a person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force.
>
> (2) Notwithstanding § 39-17-1322, a person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force intended or likely to cause death or serious bodily injury, if:
>
> > (A) The person has a reasonable belief that there is an imminent danger of death or serious bodily injury;
> >
> > (B) The danger creating the belief of imminent death or serious bodily injury is real, or honestly believed to be real at the time; and
> >
> > (C) The belief of danger is founded upon reasonable grounds.

T.C.A. § 39-11-611(b).

When a defendant relies upon a theory of self-defense, the State bears the burden of proving that the defendant did not act in self-defense. *State v. Sims*, 45 S.W.3d 1, 10 (Tenn. 2001). Further, it is well-settled that whether an individual acted in self-defense is a factual determination to be made by the jury as the sole trier of fact. *See State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). "Encompassed within that determination is whether the defendant's belief in

imminent danger was reasonable, whether the force used was reasonable, and whether the defendant was without fault." *State v. Thomas Eugene Lester*, No. 03C01-9702-CR-00069, 1998 WL 334394, at *2 (Tenn. Crim. App., at Knoxville, June 25, 1998), *perm. app. denied,* (Tenn. Feb. 1, 1999) (citing *State v. Renner*, 912 S.W.2d 701, 704 (Tenn. 1995)). It is within the prerogative of the jury to reject a claim of self-defense. *See Goode*, 956 S.W.2d at 527. Upon our review of a jury's rejection of a claim of self-defense, "in order to prevail, the [Appellant] must show that the evidence relative to justification, such as self-defense, raises, as a matter of law, a reasonable doubt as to his conduct being criminal." *State v. Clifton*, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994).

In this case, the jury clearly rejected Appellant's claim of self-defense by finding him guilty of one count of aggravated assault and one count of assault. Therefore, as stated above, Appellant must show this Court that the evidence raises a reasonable doubt as to his conduct being criminal. Appellant has not met this burden. At trial, several witnesses testified that Mr. Tolley was watching the altercation. When Appellant pushed Mr. Hicks, Mr. Tolley told Appellant not to hit a kid. At this point, Appellant began hitting Mr. Tolley with the baseball bat. Appellant alone testified that Mr. Tolley hit him before he began hitting Mr. Tolley with the baseball bat. Several witnesses also testified that Mr. Charcas had a two by four. Some witnesses testified that he was pushing people back with the board and others testified that he was swinging the board to keep people back. However, none testified that Mr. Charcas attacked Appellant. Appellant and his girlfriend both denied that Appellant was present when Mr. Charcas was hit. Appellant agreed in his testimony that Mr. Charcas did not do anything to him. Appellant also stated that he saw Mr. Charcas with the board, but Appellant did not say that Mr. Charcas was anywhere near him with the board. Therefore, there is no evidence other than Appellant's testimony to prove that he acted in self-defense and that his behavior did not constitute aggravated assault and assault. Furthermore, Appellant's testimony about self-defense was only in regard to Mr. Tolley. The jury obviously rejected Appellant's account of events. We have stated above that the jury is the arbiter of the credibility of witnesses at trial. Clearly, the jury found that Appellant was not credible, and that those who testified that Mr. Tolley was an aggressor were credible.

We conclude that the evidence was sufficient to support Appellant's conviction. Therefore, this issue is without merit.

**Consecutive Sentencing**

Appellant also argues that the trial court erred in ordering his aggravated assault and assault sentences to be served consecutively to a previously imposed sentence. "When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the

record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If . . . the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *Id.* at 345 (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

When imposing the sentence within the appropriate sentencing range for the defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (emphasis added). However, the weight given by the trial court to the mitigating and enhancement factors are left to the trial court's discretion and are not a basis for reversal by an appellate court of an imposed sentence. *Carter*, 254 S.W.3d at 345. "An appellate court is . . . bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id.* at 346.

"The amended statute no longer imposes a presumptive sentence." *Carter*, 254 S.W.3d at 343. As a result of the amendments to the Sentencing Act, our appellate review of the weighing of the enhancement and mitigating factors was deleted when the factors became advisory, as opposed to binding, upon the trial court's sentencing decision. *Id.* at 344. Under current sentencing law, the trial court is nonetheless required to "consider" an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. *Id.* The trial court's weighing of various mitigating and enhancement factors is now left to the trial court's sound discretion. *Id.*

To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See id.* at 343; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). If our review reflects that "the trial court appl[ied] inappropriate mitigating and/or enhancement factors or otherwise fail[ed] to follow the Sentencing Act, the presumption of correctness fails" and our review is de novo. *Carter*, 254 S.W.3d at 345.

> A trial court may impose consecutive sentences upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that:
>
> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a

pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b). When imposing a consecutive sentence, a trial court should also consider general sentencing principles, which include whether or not the length of a sentence is justly deserved in relation to the seriousness of the offense. *See State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). The imposition of consecutive sentencing is in the discretion of the trial court. *See State v. Adams*, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997).

As stated above, this section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that "the defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(4). However, before ordering the defendant to serve consecutive sentences on the basis that he is a dangerous offender, the trial court must find that the resulting sentence is reasonably related to the severity of the crimes, necessary to protect the public against further criminal conduct, and in accord with the general sentencing principles. *See Imfeld*, 70 S.W.3d at 708-09; *State v. Wilkerson*, 905 S.W.2d 933, 938-39 (Tenn. 1995).

The trial court stated that it was imposing consecutive sentences because of Appellant's "extensive prior record of criminal activity," Appellant "appear[ed] to be a dangerous offender," and he had "taken no responsibility for what [Appellant had] done."

Appellant argues that the trial court failed to make the proper findings as required by *Wilkerson* for imposing a consecutive sentence because he was a dangerous offender.

We agree with Appellant that the trial court did not make the proper findings under *Wilkerson* to support the imposition of a consecutive sentence based upon the determination that Appellant was a dangerous offender. However, the trial court also based the imposition of the consecutive sentence on Tennessee Code Annotated section 40-35-115(b)(2), that Appellant had an extensive record of criminal activity. In our review, the record shows that Appellant unquestionably has an extensive criminal record. His criminal record began in 1994 when Appellant was eighteen-years-old and there are convictions almost every year, and often multiple convictions, through May 2008. His convictions include multiple counts of domestic assault, multiple counts of simple assault, multiple counts of possession of marijuana, multiple counts of theft both felony and misdemeanor, multiple counts of burglary of an automobile, aggravated burglary, disorderly conduct, driving under the influence, resisting arrest, evading arrest, and misdemeanor escape. Appellant's continuous criminal history for fourteen years cannot be ignored. We conclude that Appellant's criminal history alone is sufficient to support the imposition of consecutive sentences pursuant to Tennessee Code Annotated section 40-35-115(b)(2). Therefore, this issue is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.


_____
JERRY L. SMITH, JUDGE

-10-